# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN COSTIGAN, Individually,   Case No.
   Hon.
    Plaintiff,

vs.

MEMBERSELECT INSURANCE COMPANY,
METROPOLITAN LIFE INSURANCE COMPANY,
COMAU, LLC, FCA USA LLC, EQUIAN, LLC,
and BLUE CROSS BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE COMPANY,

    Defendants.
_____/

JOSHUA R. TEREBELO (P72050)
JORDAN M. JONES (P77866)
MICHIGAN AUTO LAW, P.C.
Attorneys for Plaintiff
30101 Northwestern Hwy.
Farmington Hills, MI  48334
248-353-7575; Fax (248) 254-8091
jterebelo@michiganautolaw.com
jjones@michiganautolaw.com
_____/

## **COMPLAINT**

A complaint arising out of this transaction or occurrence has been filed in the Oakland County Circuit Court before the Honorable Hala Jarbou and given Case Number 2019-172670-NI.  That actions remains pending.

                        /S/ Joshua R. Terebelo_____
                          Joshua R. Terebelo (P72050)

1

**NOW COMES** the Plaintiff, JOHN COSTIGAN (hereinafter referred to as "COSTIGAN"), by his attorneys, MICHIGAN AUTO LAW, P.C., and for the Complaint against Defendants, states as follows:

### Nature and Action and Jurisdiction

1. This is an action to:

   A. Declare Plaintiff's right to benefits and the priority of coverage under §502(a)(1)(B) of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"), 29 U.S.C. §1132, and the Michigan No-Fault Act, M.C.L. §500.3101, et. seq.;

   B. Enjoin certain acts and practices and to obtain other appropriate equitable relief under §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

2. This Court has jurisdiction over plaintiff's ERISA claims pursuant to 29 U.S.C. §1132(e)(1).

3. This Court has supplemental jurisdiction over plaintiff's claims arising under the Michigan No-Fault Act pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

### Parties and General Allegations

5. Plaintiff, COSTIGAN, is a beneficiary of the defendants, METROPOLITAN LIFE INSURANCE COMPANY (hereinafter referred to as "METLIFE"), and BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY (hereinafter referred to as "BCBSM"), through COSTIGAN's employment with COMAU

LLC (hereinafter "COMAU") and/or FCA US LLC(hereinafter referred to as "FCA"), and he is also insured under an automobile insurance policy through MEMBERSELECT INSURANCE COMPANY (hereinafter referred to as "AAA"), who provides coverage to COSTIGAN under the Michigan No-Fault Act.

6. Through his employment with COMAU and/or FCA, COSTIGAN is provided with short term disability and medical insurance benefits through METLIFE and BCBSM, respectively.

7. Upon information and belief, Defendant, METLIFE is a self-insured, welfare benefit plan administered under the terms of ERISA for the benefit of FCA employees and their families, including beneficiaries living in Michigan.

8. Upon information and belief, COMAU and/or FCA, is the claims administrator for the Defendant METLIFE's insurance plan as described in paragraph 6, which is a welfare benefit plan administered under the terms of ERISA for the benefit of FCA Employees and their families, including beneficiaries living in Michigan.

9. Defendant EQUIAN is under contract to provide recovery services to Defendant METLIFE, Defendant METLIFE being a welfare benefit plan administered through Defendants COMAU and/or FCA, under the terms of ERISA for the benefit of COMAU and/or FCA Employees and their families, including beneficiaries living in Michigan, and Defendant EQUIAN does in fact engage in collection activities in Michigan, involving Michigan residents, relative to contracts entered into in the state of Michigan.

10. Upon information and belief, Defendant, BCBSM is a self-insured, welfare benefit plan administered under the terms of ERISA for the benefit of COMAU and/or FCA employees and their families, including beneficiaries living in Michigan.

11. In the alternative, BCBSM is the claims administer for the COMAU and/or FCA plan and administers the claims and claim payments for the health insurance plan of COMAU and/or FCA, through BCBSM, which is a welfare benefit plan administered under the terms of ERISA for the benefit of COMAU and/or FCA employees and their families, including beneficiaries living in Michigan.

12. Defendant, AAA is a Michigan insurance company that provides insurance coverage to Michigan residents under policies sold throughout Michigan.

**Factual Background**

13. COSTIGAN, was involved in a motor vehicle collision on November 17, 2018, in Tory, Michigan, in which COSTIGAN sustained serious injuries arising out of the ownership, operation, maintenance and/or use of a motor vehicle as a motor vehicle within the meaning of defendant AAA's insurance policy and the statutory provisions of the Michigan No-Fault Act, being MCLA 500.3101, *et. seq*.

14. COSTIGAN suffered, amongst other injuries, a torn right shoulder requiring surgical repair, and left knee injuries.

15. At all materials times plaintiff COSTIGAN was entitled to short term disability benefits provided by the Defendant METLIFE plan, administered by Defendant

4

COMAU and/or FCA, in which he was a participant in the event that he were to become injured and unable to work. The plan administered by Defendant METLIFE and/or Defendant COMAU and/or FCA was a welfare plan as described above.

16. At all material times COSTIGAN was entitled to health insurance benefits provided by the Defendant BCBSM plan in which he was a participant. The plan administered by Defendant BCBSM was a welfare plan as described above.

17. At all material times the plaintiff was covered for Michigan No-Fault personal protection insurance (also referred to as "PIP") benefits through an automobile policy of insurance issued by AAA, which provides for payment work loss incurred in the first three immediately following the November 17, 2018 accident, and of all allowable expenses for COSTIGAN's medical care, recovery and rehabilitation, in accordance with M.C.L. § 500.3107, and defendants BCBSM, METLIFE, COMAU, FCA and/or EQUIAN, were made aware, or informed, or had express/implied knowledge of the AAA coverage. The coverage listed AAA as primary for Work Loss and "Coordinated", or secondary, for Medical Expenses.

18. In accordance with the terms of the METLIFE plan, administered by Defendant COMAU and/or FCA, and sponsored by Defendant COMAU and/or FCA, and in accordance with the terms of the BCBSM plan, administered and/or sponsored by BCBSM, COMAU and/or FCA, numerous and substantial expenses for COSTIGAN's wage loss, medical care and treatment, surgery, hospitalization and rehabilitation

5

necessitated by the injuries they suffered in the November 17, 2018, motor vehicle accident were paid by or on behalf of the plans by METLIFE, BCBSM, COMAU, and/or FCA.

19. Under the Michigan No-Fault Act, pursuant to MCL § 500.3135, COSTIGAN, is specifically prohibited from recovering any medical expenses, or any work loss incurred within the first three years of the date of the accident, from the driver and/or owner of the at-fault motor vehicle that caused the November 17, 2018 accident in which COSTIGAN was seriously injured.

20. The METLIFE and BCBSM plans, sponsored and/or administered by COMAU and/or FCA, contain purported provisions requiring COSTIGAN, or those pursuing a legal claim on his behalf, to reimburse the METLIFE and BCBSM plans, sponsored and/or administered by COMAU and/or FCA, for any expenses which the plans paid to or on behalf of COSTIGAN for any and all November 17, 2018 motor vehicle accident related work loss benefits, care, and/or treatment expenses, out of any legal or other recovery made by or on behalf of COSTIGAN. The purported reimbursement provisions are allegedly without qualification and reimbursement is allegedly due notwithstanding the inability of COSTIGAN, or those acting on his behalf, to recover healthcare expenses, or work loss within the first three years of the date of the accident, in the third-party automobile negligence action, due to the limitations imposed by the Michigan No-Fault Act. MCL § 500.3135.

21. The METLIFE and BCBSM plans, sponsored and/or administered by

COMAU and/or FCA, also allegedly contain purported provisions giving the plans the right of subrogation with respect to any expenses which METLIFE or BCBSM, sponsored and/or administered by COMAU and/or FCA, paid to or on behalf of COSTIGAN related to work loss, or the care and/or treatment of his November 17, 2018 motor vehicle collision related injuries, from any legal or other recovery made by or on behalf of COSTIGAN. The purported reimbursement provisions are allegedly without qualification and reimbursement is allegedly due notwithstanding the inability of COSTIGAN, or those acting on his behalf, to recover healthcare expenses or work loss incurred within the first three years of the date of the accident in the third-party automobile negligence action, due to limitations imposed by the Michigan No-Fault Act. MCL § 500.3135.

22. The METLIFE and BCBSM plans, sponsored and/or administered by COMAU and/or FCA, are silent with respect to any provision expressly creating a "lien" with regard to any claimed overpayment of motor vehicle collision related medical expenses.

23. At all material times, EQUIAN and/or METLIFE plan, sponsored and/or administered by COMAU and/or FCA, knew that the relevant METLIFE plan, sponsored and/or administered by COMAU and/or FCA, did not create a valid and/or enforceable "lien" against a Michigan No-Fault third-party recovery.

24. At all material times, EQUIAN and/or METLIFE, sponsored and/or administered by COMAU and/or FCA, knew that the METLIFE plan, sponsored and/or

7

administered by COMAU and/or FCA, did not have a valid and/or enforceable claim for reimbursement of work loss expenses against a third-party automobile negligence settlement governed by the Michigan No-Fault Act.

25. At all material times, BCBSM knew that the relevant BCBSM plan did not create a valid and/or enforceable "lien" against a Michigan No-Fault third-party recovery.

26. At all material times, BCBSM knew that the BCBSM plan did not have a valid and/or enforceable claim for reimbursement of healthcare expenses against a third-party automobile negligence settlement governed by the Michigan No-Fault Act.

27. At this time, unpaid November 17, 2018, motor vehicle collision related medical expense benefits, as well as additional unpaid personal injury protection benefits including, but not limited to, wage loss and replacement services benefits are due and owing to the plaintiff by AAA.

## COUNT I
## DECLARATION OF RIGHTS UNDER ERISA
## AND MICHIGAN NO-FAULT ACT

28. Plaintiff restates all of the previous allegations as incorporated herein.

29. The terms of the METLIFE plan, sponsored and/or administered by COMAU and/or FCA, and being pursued by EQUIAN for collection, appear to be conflicting and ambiguous with respect to the duty of the plan, to pay benefits in the context of a Michigan motor vehicle collision, but resolution of the ambiguity will not result in a valid claim for reimbursement against the plaintiff's third-party automobile negligence recovery.

8

30. The terms of the BCBSM plan, sponsored and/or administered by COMAU and/or FCA, appear to be conflicting and ambiguous with respect to the duty of the plan, to pay benefits in the context of a Michigan motor vehicle collision, but resolution of the ambiguity will not result in a valid claim for reimbursement against the plaintiff's third-party automobile negligence recovery.

31. To the extent that there is any other source of fund against which METLIFE, and/or EQUIAN and/or BCBSM and/or COMAU and/or FCA may seek subrogation or reimbursement, it is the AAA No-Fault PIP policy, which provides coverage for all medical expenses, and work loss within the first three years of the accident, arising from the November 17, 2018, motor vehicle accident.

32. If the "coordination of benefits" language of the METLIFE and/or BCBSM plans, sponsored by COMAU and/or FCA, is enforceable, as initially determined by the administrators of METLIFE and BCBSM, then the METLIFE and BCBSM plans remain primary in priority and AAA is secondary in priority.

33. If the METLIFE and/or BCBSM plans, sponsored by COMAU and/or FCA, have provisions regarding reimbursement/subrogation that take precedence, essentially nullifying the "coordination of benefits" terms, then the METLIFE and/or BCBSM plans may have a right of reimbursement against AAA, only.

34. To the extent that the METLIFE and BCBSM plans, sponsored by COMAU and/or FCA, have any valid claims of reimbursement of November 17, 2018, motor vehicle

9

collision related work loss or medical expenses against the Plaintiff's third-party recovery, then those expenses were not really payable by the METLIFE and BCBSM plans, sponsored by COMAU and/or FCA, and thus AAA must be deemed primary with respect to payment COSTIGAN's work loss claims through three years from the date of the accident, and his medical claims.

35. Under no circumstances is the Plaintiff, COSTIGAN, liable for payment of medical expenses out of any third-party tort recovery, as the Michigan No-Fault Act prohibits a third party tort recovery of work loss within the first three years of the accident, and medical expenses.

36. Therefore, either the METLIFE and/or BCBSM plans sponsored by COMAU and/or FCA, or the AAA PIP automobile policy, is responsible for paying November 17, 2018 motor vehicle collision related work loss and medical expenses incurred by COSTIGAN. Thus, it would be appropriate for the Court to declare respective rights of the parties in this regard.

**WHEREFORE**, Plaintiff requests this Honorable Court to declare the rights of the parties regarding the Defendants' obligations to pay Plaintiff's November 17, 2018, motor vehicle collision related work loss and medical benefits, and determine the priority of coverage under the terms of the METLIFE and/or BCBSM plans sponsored by COMAU and/or FCA, the AAA policy, ERISA, and the Michigan No-Fault Act.

Michigan Auto Law, 30101 Northwestern Highway, Farmington Hills MI 48334 (248) 353-7575

## COUNT II
## INJUNCTIVE RELIEF UNDER §502(a)(e) or ERISA

37. Plaintiff restates all of the previous allegations as incorporated herein.

38. The METLIFE plan, sponsored by COMAU and/or FCA, does not have a valid right of reimbursement, right of subrogation or lien of any kind against Plaintiff or his third-party tort claim, arising from the November 17, 2018 motor vehicle accident.

39. The Plaintiff is a beneficiary of the METLIFE plan, sponsored by COMAU and/or FCA, and is entitled to seek injunctive relief under § 502(a)(3) of ERISA to prevent any further wrongful attempts to collect the reimbursement debt allegedly owed to METLIFE, and/or COMAU and/or FCA, and/or pursued by EQUIAN.

40. Therefore, it would be appropriate and equitable for this Court to enjoin the METLIFE plan sponsored by COMAU and/or FCA, and/or EQUIAN, and their contractors and subcontractors, from making any further attempts to collect the alleged reimbursement debt from the Plaintiff.

41. The BCBSM plan, sponsored by COMAU and/or FCA and/or BCBSM, does not have a valid right of reimbursement, right of subrogation or lien of any kind against Plaintiff or his third-party tort claim, arising from the November 17, 2018 motor vehicle accident.

42. The Plaintiff is a beneficiary of the BCBSM plan, sponsored by COMAU and/or FCA and/or BCBSM, and is entitled to seek injunctive relief under §502(a)(3) of

ERISA to prevent any further wrongful attempts to collect the reimbursement debt allegedly owed to BCBSM.

43. Therefore, it would be appropriate and equitable for this Court to enjoin the BCBSM plan, sponsored by COMAU and/or FCA, and its contractors and subcontractors, from making any further attempts to collect the alleged reimbursement debt from the Plaintiff.

**WHEREFORE**, Plaintiff requests this Honorable Court grant a permanent injunction against Defendants, prohibit them or their agents, subcontractors or anyone else from making any further attempts to collect the alleged reimbursement debt from the Plaintiff related to work loss or medical expenses.

Respectfully submitted,

Michigan Auto Law, PC


BY: /S/ Joshua R. Terebelo_____
      JOSHUA R. TEREBELO (P72050)
      Attorney for Plaintiff

Dated: April 1, 2019